880 A.2d 597

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William T. O'BERG, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 9, 2004.

Decided Aug. 16, 2005.

Vicki Ellen Herr, Esq., for William T. O'Berg.

Ray Frank Gricar, Esq., Hugh J. Burns, Jr., Esq., Belle-fonte, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

In *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002), this court held, as a general rule, that claims of ineffective assistance of counsel should be deferred until the collateral review proceedings. In this case, the Superior Court applied *Grant* and dismissed Appellant's claim of ineffective assistance of counsel. Presently, we are asked to consider whether this court should recognize a "short sentence" exception to the general rule announced in *Grant*. For the reasons stated herein, we agree with the disposition of the Superior Court and reject a "short sentence" exception. Accordingly, we affirm the judgment of sentence.

The facts relevant to the instant case are that Appellant participated in a street riot in the early morning hours of July 16, 2000 at State College, Pennsylvania. During the course of the riot, police observed individuals in the crowd pounding on cars and observed two or three individuals shake and bring down a lamp post. Appellant was observed by the police shaking a lamp post during the course of the incident. As a result of his participation in the incident, the police charged Appellant with the misdemeanor offenses of disorderly conduct and failure of a disorderly person to disperse and with the summary offense of criminal mischief. A jury convicted Appellant of all three charges on November 14, 2000. On December 14, 2000, the trial court sentenced Appellant to thirty days to twenty-three and a half months in prison plus the payment of fines. The trial court's order also provided that Appellant could remain free on bail until his appeal was

final. Appellant ultimately opted to serve his sentence beginning the summer of 2002.[1]

Appellant filed a post-sentence motion, and the court scheduled a hearing related to the motion. Following the hearing, the trial court denied the post-sentence motion. New counsel entered an appearance on Appellant's behalf and filed a Notice of Appeal in the Superior Court on May 7, 2001. Appellant filed his brief in the Superior Court on October 23, 2002, challenging the sufficiency of the evidence and raising an issue related to counsel's effectiveness at trial.

On September 10, 2003, the Superior Court affirmed the judgment of sentence. The court found the evidence was sufficient to support the convictions. Further, the court concluded that Appellant's ineffectiveness challenge was subject to the general rule announced in *Grant* and dismissed Appellant's ineffectiveness claim without prejudice to raise at collateral review.

Appellant filed a Petition for Allowance of Appeal raising the issue of whether this court should recognize an exception to the general rule announced in *Grant* in this case because of the short duration of Appellant's sentence. We granted Appellant's request to appeal.

The issue in this case arises because under the plain language of the Post–Conviction Relief Act (PCRA), an appellant is only eligible for post-conviction relief if he is "currently serving a sentence of imprisonment, probation or parole for the crime." 42 Pa.C.S. § 9543(1). Following this court's decision in *Grant,* claimants are to wait until the collateral review stage before raising claims of ineffectiveness. Thus, the net effect of these two rules is that claimants may not have the opportunity to raise a claim challenging trial counsel's effectiveness if their direct appeal is final at a time when they are no longer serving a sentence of imprisonment, probation, or parole.

1. Appellant represents in his brief that his sentence has since expired.

Appellant asserts that in order to avoid this result, this court should recognize a "short sentence" exception to the general rule announced in *Grant.* Appellant points out that the Superior Court repeatedly has recognized such an exception in situations when a claimant would be ineligible for PCRA relief because of the short duration of his or her sentence. *Commonwealth v. Blessitt,* 852 A.2d 1215 (Pa.Super.Ct.2004); *Commonwealth v. Salisbury,* 823 A.2d 914 (Pa.Super.Ct.2003); *Commonwealth v. Ingold,* 823 A.2d 917 (Pa.Super.Ct.2003). In this case, Appellant argues that he is placed in the unfair position of losing his opportunity to litigate his ineffectiveness claims. Appellant concludes that such a result conflicts with the intent of *Grant,* which was to offer "a petitioner the best avenue to effect his Sixth Amendment right to counsel." *Grant,* 813 A.2d at 738.[2]

The Commonwealth responds that Appellant is in such an "unfair" position by his own doing. The trial court originally permitted Appellant to defer his sentence until after his direct appeal was final, but Appellant elected to serve his sentence while his direct appeal was pending. Thus, Appellant essentially has "mooted" his own opportunity to take advantage of the PCRA. Similarly, the Commonwealth contends that Appellant waived this issue by failing to raise it until after the Superior Court ruled on his direct appeal. Pa.R.A.P. 302(a). Turning its attention to the *Grant* decision, the Commonwealth asserts that the Superior Court certainly had no power to create an exception to *Grant,* only this court has such power. Further, the Commonwealth argues that this court should not recognize a "short sentence" exception to *Grant,* since such an exception would undermine the reasoning underlying that decision.

We will address the Commonwealth's preliminary challenges before addressing the primary issue raised in this case. First, the Commonwealth argues that Appellant's predicament is self-created since he opted to serve his sentence early. We are not going to foreclose Appellant's opportunity to raise the

2. Appellant also raises a Due Process claim for the first time in his Reply Brief. This issue is waived. *See* Pa.R.A.P. 302.

issue in this case merely on the basis that Appellant chose to serve his sentence before his direct appeal was final. In fact, the instant case presents a perfect vehicle to review this issue, since Appellant will not have the opportunity to pursue collateral relief as he has finished serving his sentence. Moreover, the "short sentence" issue has been percolating in the Superior Court since *Grant* was decided; and the instant case presents this court with an opportunity to resolve this question.

■ Second, the Commonwealth argues that this issue is waived since Appellant did not raise it until after the Superior Court decided his direct appeal on September 10, 2003. According to the Commonwealth, the fact that Appellant filed his appeal and brief before *Grant* is not relevant, rather Appellant had a duty to amend his brief following our decision in *Grant*. First, *Grant* was not decided until over two months after Appellant filed his brief before the Superior Court. Additionally, in the months following *Grant*, it was unclear how the decision was going to be interpreted by the lower courts and applied in any given case. *See, e.g., Commonwealth v. Grant,* 573 Pa. 141, 821 A.2d 1246 (2003) (clarifying that *Grant* will "not apply to claims of ineffective assistance of counsel where the immediate appellate court on direct appeal has rendered a disposition on the merits.") Indeed, immediately following our decision in *Grant,* the Superior Court applied *Grant* in certain cases and ignored *Grant* in favor of a "short sentence" exception in other cases. Accordingly, we disagree that this issue is waived.

■ We now consider the primary issue raised by the parties—whether this court should recognize a "short sentence" exception to *Grant*. Any analysis of this issue must begin with this court's decision in *Grant* wherein this court overruled *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), which required new counsel to raise claims of previous counsel's ineffectiveness at the first opportunity, including direct appeal. We pointed out that after *Hubbard,* the procedure for raising claims of ineffectiveness was distinct

from regular appellate procedure, since normally, an appellate court would only review issues after being raised and reviewed in the lower court. *Grant*, 572 Pa. at 59–62, 813 A.2d at 733–34. With regard to ineffectiveness claims, however, *Hubbard* mandated that claimants raise new issues on appeal for the first time—at the time they obtained new counsel. *Id.* at 61–62, 813 A.2d at 734. Thus, we concluded it was time to reassess our decision in *Hubbard.*

After considering our state appellate rules, as well as looking at how other states manage ineffectiveness claims, we identified three main reasons for rejecting our prior position. First, we believed that the lack of a lower court opinion imposed a substantial impediment to this court's review. *Id.* at 59–61, 65–67, 813 A.2d at 733, 737. Second, we noted that appellate courts normally do not consider matters outside the record or matters that involve consideration of facts not in evidence. *Grant*, at 61–62, 65–67, 813 A.2d at 734, 737. Third, we pointed out that appellate courts do not act as fact finders. *Id.* at 61–62, 65–67, 813 A.2d at 734, 737. Thus, as stated previously, we announced, as a general rule, that a claimant should wait to raise claims of ineffective assistance of trial counsel until collateral review. *Id.*

Shortly after our decision in *Grant*, we had occasion to consider an exception to the general rule set forth in *Grant* in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003). The situation in *Bomar* differed from *Grant*, since *Bomar* was litigated under the *Hubbard* rule requiring ineffectiveness claims to be raised at the first possible opportunity. In *Bomar*, trial counsel withdrew from the case following sentencing, and new counsel entered the matter and filed post-sentence motions on the appellant's behalf, raising the appellant's claims of ineffectiveness. 573 Pa. at 462–64, 826 A.2d at 853. The trial court conducted hearings on the post-sentence motions. *Id.* We pointed out that because of these differences, the appeal in *Bomar* involved "a circumstance not present in, or addressed by *Grant:* appellant's claims of ineffective assistance of counsel were properly raised and preserved in the trial court." *Id.* We then looked at the concerns attendant to *Grant* and found them not applicable under the circumstances in *Bomar*. Indeed, in *Bomar*, this court had the benefit of a

trial court opinion regarding the specific claims of ineffectiveness; there was an "ample" and "extensive" trial record devoted to the ineffectiveness claims and, thus, no danger of this court engaging in appellate fact-finding; and the difficulties normally confronting appellate counsel in discovering and developing ineffectiveness claims within the limited amount of time available for failing a direct appeal were absent in light of the already-preserved nature of the defendant's ineffectiveness claims. *Id.* at 464–67, 826 A.2d at 854–55. Thus, we held that "this circumstance is an exception to the general rule of deferral in *Grant.*" *Id.* at 855.

■ As demonstrated by our decision in *Bomar* the critical inquiry is whether the trial court had the first opportunity to review the claim. Accordingly, in this case, we must consider whether recognizing a "short sentence" exception to *Grant* would undermine the reasoning that led to the general rule announced in *Grant.*

In recognizing the "short sentence" exception, the Superior Court ignored whether the trial court reviewed the claim, but rather focused on issues of fairness. For example, in *Ingold,* the court concluded that an appellant sentenced to seven days in prison could raise an ineffectiveness claim on direct appeal, since *Grant* merely announced a "general rule." *Ingold,* 823 A.2d at 919.

The Superior Court elaborated on its reasoning in *Salisbury,* when faced with an appellant sentenced to ninety days in prison. The court explained that in *Grant,* this court did not "announce a complete prohibition on consideration of ineffectiveness claims on direct review." *Salisbury,* 823 A.2d at 916. Further, the Superior Court was persuaded that in *Grant,* we recognized a principle that no harm should inure to the parties because of the new rule. *Id.; see also Commonwealth v. Blessitt,* 852 A.2d 1215, 1220 (Pa.Super.Ct.2004) (adopting the reasoning of *Salisbury,* but rejecting the appellant's argument because he was released on bond pending appeal). Ultimately, the court was persuaded that the defendant's case was such an exception because of the short dura-

tion of the term of imprisonment. *Salisbury,* 823 A.2d at 916. "Harm is demonstrated by the fact that Appellant will not be able to challenge his constitutional right to effective assistance of counsel because of the length of his sentence." *Id.* Accordingly, the court discussed the merits of the appellant's claims of ineffectiveness.

Turning to the case before us, we now consider whether there should be a "short sentence" exception to *Grant.* We acknowledge the concern that a claimant should not be harmed by the *Grant* rule. *See* Dissenting opinion at 606. That concern, however, cannot be used to defeat the reasoning underlying our decision in *Grant.* Rather, in *Grant,* we highlighted three main concerns underlying our decision to overrule *Hubbard;* namely, the lack of a lower court opinion, the lack of a record, and placing the appellate court in the role of fact finder. *Grant,* 572 Pa. at 61–62, 65–67, 813 A.2d at 734, 737. We also specifically noted that none of these concerns were implicated in *Bomar* because of the procedural posture of that case. All of these concerns, however, are implicated in the instant case and simply cannot be ignored because of Appellant's "short sentence." In this case, there is no trial court record devoted to Appellant's claim of ineffectiveness. Thus, the appellate court would be entertaining an issue for the first time on appeal. Recognizing an exception in these circumstances would not serve our decision in *Grant.*

Furthermore, the concept of a "short sentence" exception is too ambiguous to give the lower courts any guidance on what is a sufficiently "short sentence" to apply the exception. Would it be the seven-day sentence imposed in *Ingold,* the ninety-day sentence imposed in *Salisbury,* or the thirty-day to twenty-three-month sentence imposed in the instant case? Indeed, on occasion, there have been instances where a direct appeal took more than four years to be completed. *See, e.g., Commonwealth v. Douglas,* 537 Pa. 588, 645 A.2d 226 (1994) (direct appeal lasting more than 11 years); *Commonwealth v. Schaeffer,* 547 Pa. 53, 688 A.2d 1143 (1993) (direct appeal lasting at least 5 years); *Commonwealth v. McMullen,* 545 Pa. 361, 681 A.2d 717 (1996) (same). Thus, is four years a "short

sentence" under some circumstances? In other words, there is simply no way to define "short sentence." [3]

Accordingly, we believe the best course of action is to reaffirm our decision in *Grant* and reiterate that, as a general rule, claims of ineffective assistance of counsel will not be entertained on direct appeal. Moreover, we take this opportunity to disapprove of any decisions of the Superior Court that are to the contrary. For these reasons, we do not believe there is a need to create a "short sentence" exception to the general rule announced in *Grant*. Indeed, we fear doing so would undermine the very reasons that led to our decision in *Grant* in the first instance.

Accordingly, we affirm the Order of the Superior Court.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Justice BAER joins.

Justice CASTILLE, concurring.

I join the Majority Opinion. The Court correctly rejects a categorical exception to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), which would permit so-called "short sentence" defendants, who would not otherwise be able to pursue collateral relief because they will not satisfy the custody or control requirement of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.*, to raise claims of trial counsel ineffectiveness for the first time on direct appeal. I write separately to discuss the next logical question, which is whether and when a criminal defendant—short-sentence or otherwise—should be permitted to pursue an ineffective assis-

---

**3.** While we agree with Justice Saylor, that the intermediate appellate courts **may** be able to determine which sentences are reasonably likely to expire before the post-conviction review process can be meaningfully invoked, this in no way ensures fairness, since there is no standard for the courts to employ in making the determination because of the ambiguity of the exception. Ultimately, we do not see how this will lead to consistency and fairness and believe the better course of action is simply to reject a "short sentence" exception.

tance of counsel claim on post-trial motions, *i.e.*, before the collateral appeal stage.

There is nothing presently in the Rules of Criminal Procedure to **prevent** a defendant from attempting to raise a claim of ineffective assistance of counsel. But that is so, in large part, because our post-trial motions practice is a vestige of an ineffectiveness review paradigm that was dictated by *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), and its progeny, whereby criminal defendants were required to raise claims of ineffective assistance of counsel at the first available opportunity after new counsel entered an appearance in the case, upon pain of waiver of the claim. Our decision in *Grant* has now overruled *Hubbard*; it has removed the requirement that claims of ineffective assistance must be raised at the first opportunity; and it has recognized that the PCRA is the proper repository for collateral claims sounding in trial counsel ineffectiveness.

As the Majority aptly notes, *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), a case where we held that the defendant could raise ineffectiveness claims on direct review, was litigated in the trial court under the older *Hubbard* rule. The post-trial litigation in *Bomar* commenced in 1999, three years before this Court overruled *Hubbard*. Notwithstanding that this Court had struck down the procedure-based unitary review paradigm for capital cases envisioned by the General Assembly in the Capital Unitary Review Act ("CURA"), 42 Pa.C.S. §§ 9570–9579, *see In re Suspension of Capital Unitary Review Act*, 554 Pa. 625, 722 A.2d 676 (1999) (single-Justice opinion by Castille, J.) (explaining this Justice's view of reasons why CURA had to be suspended), the defendant in *Bomar* essentially proceeded, in light of the trial judge's discretionary post-verdict decisions, under a unitary review construct. This was not an unusual circumstance in capital (and some non-capital) cases arising during the *Hubbard* regime, since ineffectiveness claims were required to be raised immediately by new counsel, under pain of waiver. In *Bomar*, we engaged in direct appeal review of the defendant's ineffectiveness claims due to the very unique circumstances of that

case; we did not purport to approve such a review paradigm prospectively, as a post-*Grant* matter. Rather, this Court merely took the *Hubbard*-era record as we found it in *Bomar*, and proceeded to determine if direct review, or a pointless deferral to PCRA review, of the collateral claims was appropriate.

With respect to "short-sentence" cases, in drafting the PCRA, the General Assembly made a presumptively valid legislative judgment that direct review provides sufficient due process for relatively minor infractions, no matter how grave a defaulted constitutional violation may have occurred. The General Assembly elected to provide a reasonable time limitation for filing a PCRA petition and to exclude from its purview those petitioners who are not presently imprisoned or on parole or probation, *i.e.*, those for whom habeas corpus review traditionally would have been unavailable. 42 Pa.C.S. § 9543(1)(i); *see also Commonwealth v. Ahlborn*, 548 Pa. 544, 699 A.2d 718 (1997) (petitioner ineligible for PCRA relief where, following filing of PCRA petition and pending hearing, he was unconditionally released from prison). The General Assembly must have foreseen that, because of the minor nature of some crimes or the brevity of some sentences, certain defendants would not be entitled to seek collateral review at all. The General Assembly also must have foreseen that its custody or control restriction would effectively preclude "short sentence" defendants from pursuing collateral claims, such as ineffective assistance of counsel. The extraordinary but limited review contemplated by the PCRA instead was made available only for more serious cases, with seriousness defined not by the **nature of the claim,** but by the very tangible fact that the Commonwealth has **control over the defendant's freedom.**

Our present state of jurisprudence properly recognizes that claims of ineffective assistance of counsel are quintessentially collateral claims and that they are expressly cognizable under the PCRA. 42 Pa.C.S. § 9543(a)(2)(ii). Therefore, the PCRA, which is the "sole means of obtaining collateral relief" in Pennsylvania, unquestionably is the appropriate repository for

such claims, and our decision in *Grant* recognized as much. 42 Pa.C.S. § 9542; *Grant,* 813 A.2d at 734–38. Moreover, it is notable that this Court's unanimous decision in *Ahlborn,* which denied PCRA review where the petitioner was not in custody and thereby recognized as lawful the General Assembly's intention to limit that avenue of review, preceded our decision in *Grant.* The suggestion arising from the interplay of those two decisions is this: because the PCRA is deliberately limited in scope as to both the defendants who are eligible to pursue relief and the claims which they may raise, this Court should not expand the scope of post-verdict motions and direct review, so as to subvert the PCRA and allow for pre-litigation of claims that cannot be raised under the PCRA because the petitioner will not be within the Commonwealth's control or custody.

There is nothing unreasonable, unwise, or unconstitutional with such a construct. A criminal conviction is not deemed infirm simply because the defendant is not afforded multiple opportunities to set it aside or, at a minimum, one guaranteed opportunity to blame his presumptively competent lawyer for his conviction. *See Ahlborn.* In a world of overburdened courts and overtaxed governmental coffers, it is perfectly rational to deny habeas corpus/collateral claim review to petitioners whose "bodies" the state no longer "has"—even if it means they lose the chance to raise any and all complaints they may have about their trial lawyers. The General Assembly made pellucidly clear that its collateral-attack interest was limited only to affording an avenue of relief from actual state control when it noted that the Act "is not intended ... to provide relief for collateral consequences of a criminal conviction." 42 Pa.C.S. § 9542. The PCRA's focus on affording relief only for those facing actual restraints upon their freedom—irrespective of the constitutional claims they would raise—is consistent not only with common law notions of habeas corpus review, but also with the general state habeas corpus statute. *See* 42 Pa.C.S. § 6501 *et seq.*[1]

1. This Justice has suggested that Pennsylvania's state habeas corpus statute might afford an avenue of review for colorable constitutional

I understand the visceral attraction of the "short sentence" exception appellant proffers—if the exception is not recognized, he will never be able to assail the performance of his trial counsel. My difficulty with the theory is that it is not premised upon the alleged existence of a particularly egregious instance of ineffective assistance of counsel, such as the constructive denial of counsel or an actual conflict of interest, *etc. See, e.g., United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *accord Grant*, 813 A.2d at 738 n. 14. Instead, the broad Sixth Amendment claim forwarded here is premised upon the dubious assumption that claims of ineffective assistance of trial counsel **as a class** are of such primary importance that the usual constraints attending postverdict practice, appellate review, and PCRA review should be shunted aside so that direct review may become the repository for a compressed, unitary type of review which may capture both direct and quintessentially collateral claims.

In light of the now-settled PCRA construct, I do not believe that this Court is remotely obliged to permit **any** criminal defendant—no sentence, short sentence, long sentence, capital sentence—to raise collateral claims, such as ineffective assistance of trial counsel, **as a matter of right** upon post-trial motions. One of the salutary, corrective, and visionary features of *Grant* was its recognition that direct and collateral review should be permitted to play the distinct and essential roles they are supposed to serve in the criminal justice system. The appropriate forum for litigating claims of ineffectiveness is under the PCRA. That "short sentence" defendants may not be able to pursue such claims is an appropriate consequence of a legislative choice made by the people's duly-elected representatives. It makes no more sense to torture post-trial practice to convert it into a quasi-PCRA role than it does to torture the direct appeal process to serve the same

claims that are not cognizable under the PCRA. *Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287, 290 (2001) (Castille, J., concurring). The Court, however, has not embraced that view; and, in any event, this appellant cannot avail himself of a state habeas corpus remedy for the same reason he cannot invoke PCRA review, *i.e.*, he is not in custody. 42 Pa.C.S. § 6501, *et seq.*

quasi-collateral function. Ineffective assistance of counsel claims, as a class, are no more important than other substantive constitutional claims deemed cognizable under the PCRA, such that they must be afforded an *ad hoc,* judicially-created, extra-PCRA forum. While I might vest discretion in the trial courts to entertain exceptions to a general rule deferring ineffectiveness claims to PCRA review, I certainly would not subvert the PCRA by recognizing a categorical exception arising from the absence of custody, where the General Assembly has specifically addressed that circumstance.

In my view, the jurisprudential underpinnings of *Grant,* the practical effect of the decision, and the requirements of the PCRA necessarily call for a careful reconsideration of post-trial practice, and ideally, this reconsideration should occur in conjunction with formal rulemaking, beginning with a specific referral to the Criminal Procedural Rules Committee.[2] Furthermore, I believe that any consideration of whether and when claims of ineffectiveness may appropriately be pursued upon post-trial motions must account for the proper role played by the PCRA, as well as the consequence that should follow upon a determination that a defendant will be permitted to advance his collateral claims and litigate them in some "unitary" post-trial proceeding and on direct appeal. For instance, it seems logical that, in a case where the defendant is serving a lengthy sentence, if the trial court is essentially asked to permit a defendant to compress collateral/PCRA review into his post-trial motions and direct appeal, the cost of doing so should be an explicit waiver of the right to pursue a

---

2. On June 8, 2005, effective August 1, 2005, the Rules Committee amended its Comment to Rule 720 (Post–Sentence Procedures; Appeal), to account for the abrogation of *Hubbard* by *Grant.* Formerly, the Comment to Rule 720 contained a paragraph explaining that, under *Hubbard,* a defendant represented by new counsel at the post-sentence stage **must** raise, and the trial court **must** decide, any ineffectiveness claims. Correspondingly, the paragraph also required the trial court to hold an evidentiary hearing where the record was inadequate to decide such a claim. The Committee's amendment replaces the former paragraph with a new paragraph explaining that *Grant* has overruled *Hubbard* and that a defendant "should wait" until collateral review to raise any ineffectiveness claims.

later petition as of right under the PCRA.[3] The post-verdict process should not be allowed to become a vehicle by which a defendant secures a second round of collateral attack as of right, raising new claims of ineffective assistance, where the PCRA explicitly envisions a single collateral challenge, in the absence of the extraordinary circumstances governing serial petitions as set forth in 42 Pa.C.S. § 9545(b).

For the foregoing reasons, I join the Majority Opinion, and I would refer the question of the availability of the post-trial procedure for review of ineffectiveness claims to the Pennsylvania Criminal Procedural Rules Committee for study and recommendation.

Justice SAYLOR, dissenting.

The majority declines to afford Appellant the benefit of the rule embodied in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), which was in effect at the time of his conviction, the imposition of sentence, the lodging of the notice of appeal, and through the initial briefing in the Superior Court. Rather than applying the prevailing rule in effect at all relevant times, the majority applies the new protocol established in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), implementing *Grant's* express and exceptional pronouncement that its procedural dictates would be applied retroactively. *Grant*, however, justified such retroactive application based on the stated premise that "neither party will be harmed by [retroactive] application of the new rule since claims of ineffectiveness can be raised in a collateral proceeding." *See id.* at 68, 813 A.2d at 739. This premise being faulty in situations such as Appellant's, where collateral review is unavailable, I simply cannot support the retroactive application of *Grant* to his appeal and would therefore remand for appropriate review under the *Hubbard* paradigm.[1]

3. Of course, it is well-settled that counsel may not allege his own ineffectiveness. *See Commonwealth v. Saranchak*, 866 A.2d 292, 299 n. 9 (2005); *see also Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (1998). Accordingly, the universe of potential claims at the post-verdict and direct appeal stage would be substantially limited.

1. In its rejoinder to this dissent, the majority dismisses the above retroactivity concern by way of reference to *Grant's* reasoning concern-

Further, I support the *en banc* Superior Court's effort to implement fundamental fairness by answering in the affirmative a primary question left open by *Grant,* namely, whether it is appropriate to apply an exception to the general rule requiring deferral of claims of ineffective assistance of counsel to post-conviction review in circumstances involving sentences of short duration. *See Commonwealth v. Blessitt,* 852 A.2d 1215, 1219–20 (Pa.Super.2004) (*en banc* ). Among other reasons, the majority rejects such exception on the basis that there is no evidentiary record pertaining to the ineffectiveness claim that Appellant seeks to raise, no resolution of credibility issues and matters of evidentiary weight by a fact finder, and no opinion by the trier of fact. *See* Majority Opinion, *op.* at 602. This reasoning, however, overlooks that the alternative to the *Grant* rule, *Hubbard,* allows for a remand by an appellate court to the trial court for an evidentiary hearing and associated fact finding and legal determinations concerning the merits of ineffective claims raised for the first time on appeal. *See, e.g., Commonwealth v. Musi,* 486 Pa. 102, 108 n. 4, 404 A.2d 378, 380 n. 4 (1979) ("Where one seeks to raise a claim of ineffective assistance on direct appeal and an enhanced record is required to support the claim, the proper procedure is to request a remand for an evidentiary hearing." (citing, *inter alia, Hubbard,* 472 Pa. at 278, 372 A.2d at 696)).[2]

ing the issue of whether the Court should overrule *Hubbard* and move to a "deferral" rule in the first instance. *See* Majority Opinion, *op.* at 601–02. By so mixing two distinct inquiries, the majority merely circumnavigates the retroactivity issue and the pertinent aspect of *Grant.* In this regard, *Grant* correctly treated the decision to move to a deferral rule as an issue which was logically separate from whether the new rule should be retroactively applied. *See Grant,* 572 Pa. at 67–69, 813 A.2d at 738–39 (reflecting *Grant's* central holding announcing the deferral rule, followed by a distinct evaluation of whether such rule should be applied retroactively). Further, as noted above, *Grant's* central rationale on retroactivity is clear and straightforward, *see id.* at 68, 813 A.2d at 739 ("[N]either party will be harmed by [retroactive] application of the new rule since claims of ineffectiveness can be raised in a collateral proceeding."), and undercuts the majority's present disposition.

2. Indeed, the mandate in *Hubbard* itself subsumed a remand on an ineffectiveness issue. *See Hubbard,* 472 Pa. at 286, 372 A.2d at 700.

With regard to the ambiguity concerning the range of sentences that would qualify for treatment under the exception, *see* Majority Opinion, *op.* at 19–20, 880 A.2d at 602, I believe that is preferable to permit the intermediate appellate courts faced with ineffectiveness issues raised for the first time on appellate review to determine which sentences are reasonably likely to expire before the post-conviction review process can be meaningfully invoked.[3] The alternative is to curtail unduly the availability of appellate review to a category of persons relative to claims predicated on their constitutional right to effective representation, a course which seems to me to impinge upon the right of direct appeal guaranteed under the Pennsylvania Constitution. *See* PA. CONST. art. V, § 9.[4]

**3.** In this regard, I respectfully differ with the majority's approach in relying upon anecdotal aberrations and/or instances of systemic failure, such as an eleven-year direct appeal, *See* Majority Opinion, *op.* at 19–20, 880 A.2d at 602, in rejecting an assessment based upon the reasonable likelihood of the availability of collateral review. While such occurrences highlight the need for vigilance in judicial case management, they do not justify the elimination of appellate review relative to any category of claims, let alone ones that are constitutionally grounded.

The majority's concern over ambiguity also seems to me to be overstated, since many other prevailing legal standards undergirding our legal system entail judgments based on probabilities and/or likelihood, such as the preponderance-of-the-evidence concept that governs in civil proceedings, or the evaluation of reasonable probability that otherwise would serve as a litmus relative to the availability of relief on Appellant's Sixth Amendment claim. *See, e.g., Wiggins v. Smith,* 539 U.S. 510, 536–37, 123 S.Ct. 2527, 2543, 156 L.Ed.2d 471 (2003).

Indeed, were the majority to revisit the line of decisions from other jurisdictions which *Grant* invoked, *see Grant,* 572 Pa. at 62–65 & n. 13, 813 A.2d at 734–37 & n. 13, it would find that few, if any, would support a rule that is so ironclad as to amount to a policy of no review.

**4.** Like the due process claim dismissed by the majority as having been waived, *see* Majority Opinion, *op.* at 15 n. 2, 880 A.2d at 599 n. 2, perhaps it can be said that any claim under Article V, Section 9's guarantee of the right to a direct appeal is also waived here, since Appellant does not specifically invoke that constitutional provision. If this is the situation, however, then this matter is not the "perfect vehicle" to make a broad, policy-based determination concerning the availability of a short-sentence exception to the *Grant* rule as the majority indicates. *See* Majority Opinion, *op.* at 14–15, 880 A.2d at 599. Rather, it represents a more straightforward, error-review case in which some of the most problematic aspects of the application of *Grant*

In summary, to me, the majority's position that *Grant's* rationale justifies a policy of no review in the short-sentence scenario rings hollow, since in crafting its rule of "deferral," the *Grant* Court expressly grounded its rationale on the availability of collateral review. *See, e.g., Grant,* 572 Pa. at 67, 813 A.2d at 738 ("Deferring review of trial counsel ineffectiveness claims until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel.").

Justice BAER joins this dissenting opinion.

in the short-sentence paradigm lie beyond the available scope of our review.